***********
The Full Commission reviewed the prior Opinion and Award based upon the record of the proceedings before Deputy Commissioner Gillen and the briefs and oral arguments before the Full Commission. The appealing party has not shown good grounds to reconsider the evidence, receive further evidence, or rehear the parties and their representatives. Accordingly, the Full Commission AFFIRMS the Opinion and Award of Deputy Commissioner Gillen with modifications.
 ***********
The Full Commission finds as a fact and concludes as a matter of law the following, which were entered into by the parties as:
 STIPULATIONS *Page 2 
1. The parties are subject to and bound by the provisions of the North Carolina Workers' Compensation Act.
2. An employment relationship existed between plaintiff and defendant on 27 February 2007.
3. Defendant is self-insured, with Key Risk Management Services, Inc. as the third-party administrator.
4. Plaintiff has an average weekly wage of $505.99, yielding a weekly compensation rate of $337.34.
5. Defendant accepted as compensable plaintiff's back injury of 27 February 2007.
6. Plaintiff was terminated from employment effective 28 January 2008 for reasons unrelated to the workers' compensation injury.
 ***********
The following were entered into evidence as:
 STIPULATED EXHIBITS a. The Pretrial Agreement, marked as stipulated exhibit 1.
 b. Records reflecting workers compensation payments made to plaintiff, marked as stipulated exhibit 2.
 c. Plaintiff's medical records, marked as stipulated exhibit 3.
 ***********
The following were entered into evidence as:
 EXHIBITS a. A DVD containing over 100 video files, marked as defendant's exhibit 1. *Page 3 
 b. 20 pages of pictures collectively paginated and marked as defendant's exhibit 2.
 c. The curriculum vitae of Information Security Specialist Scott C. Gardner, marked as defendant's exhibit 3.
 d. Plaintiff's job search records, marked as plaintiff's exhibit 1.
 *********** EVIDENTIARY RULINGS
At the hearing before the Deputy Commissioner defendant moved for the admission into evidence of defendant's exhibits 1 and 2. Defendant's exhibits 1 and 2 contain graphic visual depictions of plaintiff performing sexual acts. Defendant represented that the sexual acts depicted in the material show plaintiff to be violating his medical restrictions in various ways, and that the material was created while he was out of work receiving workers' compensation disability benefits. Plaintiff objected to the admission of these exhibits. The grounds of plaintiff's objection included a challenge to the material's relevancy as well as an assertion that the probative value of these items was outweighed by their prejudicial effect.
Regarding relevancy, plaintiff contended that there is no indication as to the dates the videos were created and therefore that there is no way to know if the acts were performed and videoed during a relevant time period. However, there are some dates associated with the material. Dates associated with the videos are subsequent to plaintiff's date of injury, and therefore the creation of the videos occurred during a time period relevant to this claim. The Deputy Commissioner therefore overruled plaintiff's relevancy objection pursuant to North Carolina Rule of Evidence 401. *Page 4 
The Deputy Commissioner further determined that any prejudicial effect of the contested evidence was significantly outweighed by its probative value, and that the material therefore easily complied with the standard for admission under North Carolina Rule of Evidence 403. The material in the contested exhibits is highly probative in at least three ways. First, the exhibits could illuminate possible Seagraves and other employment issues surrounding plaintiff's termination from defendant. Second, the material could reflect on plaintiff's credibility regarding his representations about his ability to work and/or physical restrictions. Third, the acts depicted could illustrate plaintiff's level of disability.
Given the foregoing, plaintiff's objections to this material were overruled and defendant's exhibits 1 and 2 were entered into evidence. The Full Commission concurs with the evidentiary rulings of Deputy Commissioner Gillen.
 ***********
Subsequent to the hearing before the Deputy Commissioner, on 19 June 2009 defendant notified the Deputy Commissioner that an oral exchange had taken place subsequent to an expert deposition in this case, after attorney for plaintiff had left the deposition location. The exchange occurred when Dr. Clinton Massey made an unsolicited remark to counsel for defendant. Defendant filed a 19 June 2009 motion to submit an affidavit from Dr. Massey regarding the information contained in Dr. Massey's post-deposition remark. Plaintiff objected to defendant's motion. By Order filed 6 July 2009, Deputy Commissioner Gillen denied defendant's motion. Defendant then filed a 7 July 2009 motion to extend the deadline to complete the depositions in this matter so as to allow an additional deposition testimony of Dr. Massey. Plaintiff objected to this motion by email dated 17 July 2009. Deputy Commissioner Gillen also denied the 7 July 2009 motion. *Page 5 
 ***********
Based upon all of the competent evidence of record and reasonable inferences flowing therefrom, the Full Commission makes the following:
 FINDINGS OF FACT
1. At the time of the hearing before the Deputy Commissioner, the State of North Carolina's workers' compensation administrator was Key Risk Management Services. However, effective 1 July 2009, CorVel Corporation became North Carolina's workers' compensation administrator. The caption has been amended to reflect this change.
2. On 27 February 2007, plaintiff was employed as a Health Care Technician II at the O'Berry Center, a residential healthcare facility. Plaintiff reported that on this date he was involved in a physical struggle with a patient and during the course of this struggle plaintiff's back was injured. Defendant accepted this claim as compensable and benefits were paid to plaintiff beginning 5 March 2007 pursuant to a Form 60 dated 2 May 2007.
3. In January 2008, Carolyn Davis, defendant's Acting Director of Residential Services, received reports of employee complaints regarding the existence of internet videos depicting plaintiff performing sexual acts while plaintiff was out of work receiving workers' compensation benefits. As a result, an investigation was initiated.
4. Scott Gardner works in the Department of Health and Human Services Security Office and was involved in the investigation. Mr. Gardner found a website that contained graphic pornographic videos and images depicting plaintiff and fellow O'Berry Center employee Shameka Broadhurst. Mr. Gardner gained access to the website, from which he downloaded approximately 107 graphic pornographic videos of varying lengths, with 71 listed as posted by Shameka Broadhurst, and 36 listed as posted by plaintiff. *Page 6 
5. Following defendant's positive identification of plaintiff and Ms. Broadhurst as the individuals in the videos, both were terminated from employment for personal misconduct effective 28 January 2008. A non-injured employee would have been treated identically.
6. Plaintiff and Ms. Broadhurst freely admitted in their testimony that they were the individuals depicted on the website's pictures and videos.
7. Plaintiff and Ms. Broadhurst testified that the videos were created in 2005 and 2006, prior to the workplace injury, and were merely posted in late 2007 and early 2008. However, the greater weight of the evidence indicates otherwise.
8. Website content created by plaintiff and/or Ms. Broadhurst indicates that these videos were created in close temporal proximity to their posting dates. For example, one video depicting plaintiff and Ms. Broadhurst was added to the website on 29 December 2007 and is entitled "End Of Year Bash! The . . . Party Has Started!!!!!!!!!!!!!" Furthermore, this video was posted with the message "What it do . . . members here is the final video of the year leading into 08! We wish you all a happy new year and last but not least . . . In the new year expect more new videos and possibly some new treats aight!"
9. Another video was added to the website on 12 January 2008 by plaintiff and is entitled "I'M BACK!!!!!!!!" This video was posted with the message "THE FIRST VIDEO OF 2008! SIT BACK AND ENJOY ANOTHER MASTERPIECE."
10. Plaintiff testified that he used his cell phone to record them, stored them on his cell phone, and then posted them two or more years later in random order on the website. Plaintiff further testified that the dates reflected in the video titles and comments have no relation to the videos' dates of creation. *Page 7 
11. The Full Commission finds that the testimony given by plaintiff and Ms. Broadhurst regarding the dates of creation of the videos is not credible. The greater weight of the credible evidence indicates, and the Full Commission finds, that the videos were created in close temporal proximity to their posting dates.
12. On 28 February 2007, plaintiff was released to return to work in a sedentary capacity with no exposure to aggressive clients. A 9 March 2007 MRI report reflects that plaintiff had "[m]ild degenerative disc disease at L2-3. No focal disc herniation or spinal canal stenosis." Due to the results of the MRI, plaintiff was scheduled for a lumbar spine fusion. On 1 May 2007, plaintiff was taken out of work by Dr. Davis Frederick of Goldsboro Orthopaedic until his surgery. Dr. Frederick indicated that following the surgery, he would write plaintiff at maximum medical improvement after a functional capacity evaluation.
13. On 1 August 2007, plaintiff underwent L2-3 translumbar interbody fusion surgery performed by Dr. Clinton Massey. Dr. Massey testified that "L2-3 is in the lower back, but it's above the waist, usually just above the belt line."
14. Plaintiff underwent a Functional Capacity Examination on 15 November 2007 given by Physical Therapist Harry Moore. During the examination plaintiff reported limitations in activities including hobbies, sports, sexual relations, and work. During the examination, plaintiff exhibited inappropriate illness behavior in two out of six categories. This examination found that plaintiff could lift ten pounds floor to knuckle, only 20 pounds knuckle to lordosis, and that his carrying 14 feet limit was 25 pounds. Mr. Moore recommended a work hardening program for plaintiff.
15. On 27 November 2007, Dr. Massey noted that during the functional capacity evaluation, plaintiff had lifting capabilities, but that it was felt that with floor to waist lifting and *Page 8 
pushing and pulling that there was some limited effort. Dr. Massey recommended that plaintiff begin a work hardening program. Regarding the restrictions noted in the functional capacity evaluation, Dr. Massey testified, "[plaintiff's] strength was normal from the standpoint of measuring his strength, and the lifting restriction is based on his report of pain and discomfort."
16. Dr. Massey viewed multiple videos during the course of his deposition. Many activities performed by plaintiff in the videos directly contradicted the information he gave his medical providers regarding his pain and physical capabilities.
17. In a video posted 17 December 2007, plaintiff holds Ms. Broadhurst up in front of him facing him as he stands during sexual intercourse, experiencing no apparent pain. Regarding this video Dr. Massey testified that Ms. Broadhurst weighed more than 30 pounds, that the activity depicted should cause pain given plaintiff's previous representations, and that he would not recommend that plaintiff take part in this type of activity.
18. Dr. Massey viewed portions of a video that was posted to the website on 12 January 2008. Regarding the physical movements plaintiff performed during that video with no apparent pain, Dr. Massey testified, ". . . based on other things that he has told us we would think that that would be a very painful conditi[on] — or that would be a painful activity for him to do and one that he — you know, based on what he — other things he said, he would not — he would not choose to do."
19. Dr. Massey viewed portions of a video that was posted to the website on 15 January 2008. Regarding the physical movements plaintiff achieved during that video with no apparent pain, Dr. Massey testified similarly, stating, "there would be a lot of pain as a result of doing that, based on what he told us." *Page 9 
20. Dr. Massey further testified generally about plaintiff's performance in the videos, ". . . I would again think that if he was in significant amount of pain as a result of these activities that there would be — that there would be some question as to whether or not he could maintain an erection and that sort of stuff for that period of time if he was in severe back pain as a result of that."
21. Based on plaintiff's examinations and plaintiff's representations of his pain and limitations, as of 2 February 2008 Dr. Massey released plaintiff to return to work with restrictions of no bending at the waist and no lifting more than thirty pounds.
22. In a 12 February 2008 medical note, Dr. Massey relates that plaintiff "was involved in two motor vehicle accidents[,] one on January 31 when a car pulled into his path . . . striking him head on and `totaling' his car. He then was involved in a subsequent accident February 7 when a car pulled into the traffic and struck his car on the left side and spun him around."
23. Plaintiff was last treated by Dr. Massey on 16 June 2008. Plaintiff was scheduled to return to Dr. Massey but did not. Dr. Massey would have expected plaintiff to reach maximum medical improvement in August of 2008, and that, assuming plaintiff developed a solid fusion at the surgical site, that plaintiff would have been released to return to work at his pre-injury job.
24. The Full Commission does not find plaintiff to be credible regarding his complaints of pain and ability to work. The greater weight of the evidence shows that plaintiff has been able to engage in activities outside of the restrictions set forth in the 15 November 2007 functional capacity evaluation. *Page 10 
25. Given the credible evidence of record, plaintiff failed to prove by the greater weight of the evidence that he was not capable of working as a result of the 27 February 2007 injury subsequent to 15 November 2007.
 ***********
Based upon the foregoing Stipulations and Findings of Fact, the Full Commission makes the following:
 CONCLUSIONS OF LAW
1. Defendant accepted as compensable plaintiff's 27 February 2007 injury using a Form 60 dated 2 May 2007. N.C. Gen. Stat. § 97-18(b); Sims v. Charmes/Arby's RoastBeef, 142 N.C. App. 154, 542 S.E.2d 277 (2001).
2. The Form 60 filed in this matter does not create a presumption of continuing disability. The burden of proving compensable disability remains with plaintiff. Sims v. Charmes/Arby's RoastBeef, 142 N.C. App. 154, 542 S.E.2d 277 (2001). In order to meet the burden of proving disability, plaintiff must prove that she was incapable of earning pre-injury wages in either the same or in any other employment and that the incapacity to earn pre-injury wages was caused by plaintiff's injury. Hilliard v. Apex CabinetCo., 305 N.C. 593, 290 S.E.2d 682 (1982). An employee may meet the initial burden of production by producing one of the following: (1) medical evidence that she is physically or mentally, as a result of the work-related injury, incapable of work in any employment; (2) evidence that she is capable of some work, but that he has, after a reasonable effort, been unsuccessful in his efforts to obtain employment; (3) evidence that she is capable of some work, but that it would be futile because of preexisting conditions, such as age, inexperience, or lack of education, to seek employment; or (4) evidence that she has obtained other employment at wages less than her pre-injury wages.Demery v. *Page 11 Perdue Farms, Inc., 143 N.C. App. 259, 545 S.E.2d 485 (2001);Russell v. Lowes Product Distrib.,108 N.C. App. 762, 425 S.E.2d 454 (1993).
3. Given all the evidence presented in this case, including copious video evidence that belies his representations to his medical providers regarding his pain and physical abilities, plaintiff has failed to prove that he is not capable of working and has failed to meet his burden of proving compensable disability subsequent to 15 November 2007, the date of plaintiff's functional capacity evaluation. N.C. Gen. Stat. § 97-2(9); Sims v.Charmes/Arby's Roast Beef,142 N.C. App. 154, 542 S.E.2d 277 (2001); Russell v. Lowes Prod.Distribution, 108 N.C. App. 762, 441 S.E.2d 145 (1993).
4. Subject to the limitations of N.C. Gen. Stat. § 97-25.1, plaintiff is entitled to have defendant provide all medical treatment, incurred or to be incurred, necessitated by the 27 February 2007 injury. N.C. Gen. Stat. §§ 97-25; 97-25.1;Perez v. American Airlines,174 N.C. App. 128, 620 S.E.2d 288 (2005).
5. Plaintiff was terminated effective 28 January 2008 for reasons, unrelated to his workplace injury, for which an uninjured employee would have been terminated. Seagraves v. Austin Co. ofGreensboro, 123 N.C. App. 228, 472 S.E.2d 587 (1996). Accordingly, plaintiff's termination constitutes a constructive refusal of suitable employment. Even if plaintiff had established disability after 15 November 2007, plaintiff would not be entitled to disability compensation subsequent to 28 January 2008.Id.
6. Defendant is entitled to a credit for the temporary total disability benefits paid to plaintiff subsequent to 15 November 2007. N.C. Gen. Stat. § 97-42.
 *********** *Page 12 
Based upon the foregoing Stipulations, Findings of Fact, and Conclusions of Law, the Full Commission enters the following:
 AWARD
1. Subject to the limitations of N.C. Gen. Stat. § 97-25.1, defendant shall pay all medical expenses incurred or to be incurred by plaintiff as a result of his 27 February 2007 injury.
2. Plaintiff is not entitled to temporary total benefits subsequent to 15 November 2007.
3. Defendant is entitled to a credit for the temporary total disability benefits paid to plaintiff subsequent to 15 November 2007.
4. Hearing costs have already been assessed pursuant to North Carolina Workers' Compensation Act Rule 611(6).
This the 14th day of April 2010.
 S/___________________ STACI T. MEYER COMMISSIONER
CONCURRING:
 S/___________________ LAURA KRANIFELD MAVRETIC COMMISSIONER
 S/___________________ BERNADINE S. BALLANCE COMMISSIONER